UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| PRESIDENT CASINOS, INC., ) | |
| ) | |
| Debtor, ) | |
| ) | |
| _____ ) | Case No. 4:08CV1976 CDP |
| ) | |
| MARY ZEGEER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | |
| ) | |
| PRESIDENT CASINOS, INC., ) | |
| ) | |
| Appellee. ) | |

# MEMORANDUM OPINION AND ORDER

Mary Zegeer appeals an order of the Bankruptcy Court confirming a plan of liquidation for a company in which she owns stock, President Casino's Inc. (PCI), and one of its subsidiaries, PRC-Management, Inc. Zegeer objected to confirmation of the plan, and the Bankruptcy Court overruled her objections. Jurisdiction over this appeal is proper under 28 U.S.C. § 158(a)(1).

On June 20, 2002, PCI filed a voluntary petition for reorganization under Chapter 11, Title 11 of the United States Code (the Bankruptcy Code) in the United States Bankruptcy Court for the Southern District of Mississippi. By July

2002, seven of PCI's wholly-owned subsidiaries had also filed voluntary reorganization petitions: President Riverboat Casino-Missouri (PRC-Missouri), President Riverboat Casino-Mississippi (PRC-Mississippi), Broadwater Hotel, Inc. (BHI), Vegas-Vegas, Inc., PRC Holdings Corp., TCG Blackhawk, Inc., and PRC Management, Inc. By Order of the Mississippi Bankruptcy Court, PCI's Chapter 11 case and the Chapter 11 cases of its subsidiaries were transferred to the United States Bankruptcy Court for the Eastern District of Missouri. The cases have been procedurally consolidated and jointly administered under orders entered by the Bankruptcy Court.

On August 27, 2008, PCI and PRC Management filed a Disclosure Statement, a Chapter 11 Plan of Liquidation (the Plan), and a Class 7 Ballot for Accepting or Rejecting Jointly Proposed Plan of Liquidation. On November 7, 2008, Zegeer filed an object to the Plan. The Bankruptcy Court held a hearing on November 17, 2008. At the hearing, counsel for Zegeer objected to confirmation of the Plan, and moved for a Rule 2004 examination and the appointment of a new trustee and a committee of non-controlling equity security holders. After hearing argument, the Bankruptcy Court orally denied Zegeer's objection and motions and confirmed the Plan. On November 19, 2008, the Bankruptcy Court issued a written order confirming the Plan and denying all objections, including Zegeer's.

The court issued an amended final order on November 25, 2008. Zegeer filed a Notice of Appeal on November 26, 2008.

Zegeer raises three issues on appeal. First, she argues that she was not given proper notice of the bankruptcy case, and, as a consequence, cannot be bound by the rulings of the Bankruptcy Court. Second, she argues that the Bankruptcy Court erred by ignoring evidence of fraud and impropriety on the part of PCI and its affiliates in connection with certain distributions to be made under the Plan. Third, Zegeer claims that the Bankruptcy Court abused its discretion by ignoring this evidence, overruling her objections, and confirming the Plan.

I find that the doctrine of equitable mootness applies to Zegeer's appeal, and so the appeal should be dismissed. Alternatively, her arguments that the Plan should not have been confirmed are wholly without merit. I will therefore affirm the judgment of the Bankruptcy Court.

## I. **Background**

Zegeer objects to the Plan because she believes that "a couple of insiders" are "taking what's left, and leaving the others behind." Zegeer claims that money that should be going to PCI equity shareholders under the Plan has been improperly diverted to company insiders through an elaborate series of transactions dating back to 1997. The "insiders" are John Connelly (former CEO of PCI), other employees and officers of PCI, and J. Edward Connelly Associates

(referred to in the bankruptcy proceedings as JECA). Specifically, Zegeer alleges that a distribution of money set to go JECA under the Plan is based on a series of breaches of fiduciary duty, diversions of corporate opportunities, self-dealing, and undisclosed conflicts of interest on the part of Connelly and other PCI insiders. Because the distribution to JECA is improper, Zegeer argues, the money should be given to the equity shareholders instead.

Zegeer objects to the liquidation plan for PCI and PRC Management. The facts underlying her objection, however, arose during the confirmation of two earlier reorganization plans – the plan for PCI's Mississippi subsidiaries and the plan for its Missouri subsidiary – that had already been confirmed by the Bankruptcy Court at the time of her objection. Through its subsidiaries, PCI owned and operated casinos in Missouri and Mississippi. In Mississippi, PCI's assets were owned and operated by its Mississippi subsidiaries: PRC-Mississippi, Vegas-Vegas, and BHI (all wholly owned by PCI), and President Broadwater Hotel, LLC (PBHLLC) (a partially owned subsidiary of BHI). In Missouri, PCI's assets were owned and operated by its Missouri subsidiary: PRC-Missouri. PBHLLC filed for bankruptcy in 2001, and its plan of reorganization was confirmed by the Mississippi Bankruptcy Court in 2003. By July 2002, PCI and all the related Missouri and Mississippi subsidiaries had also filed for bankruptcy. The Bankruptcy Court confirmed a reorganization plan for the Mississippi

subsidiaries on May 27, 2005 (the Mississippi Plan), and for the Missouri subsidiary on December 4, 2006 (the Missouri Plan).

Both the Mississippi Plan and the Missouri Plan included a distribution to JECA. The basis of these distributions was a deal that occurred between JECA and PBHLLC in 1997 involving the sale of property. In 1997, JECA sold property in Mississippi (the Broadwater property) to PBHLLC. Connelly was in control, indirectly or directly, of both JECA and PBHLLC at the time of the sale: Connelly was both the CEO and Board Chair of PCI (PBHLLC is a partially owned subsidiary of BHI, which, in turn, is a wholly owned subsidiary of PCI) as well as JECA's sole shareholder. In a series of transactions involving JECA, other PCI directors, BHI, PBHLLC, and various other entities, JECA ended up with an ownership interest in PBHLLC in exchange for the Broadwater Property. This transaction forms the basis of Zegeer's objection to the distribution to JECA under the Plan. However, Zegeer was not the first to question it. The facts surrounding the JECA-PBHLLC deal first came to light in a report that was written in connection with the bankruptcy proceedings for PCI's Mississippi subsidiaries.

A. The Sosne Report

In 2002, the bankruptcy proceedings of PCI, PRC-Management, and PCI's Mississippi and Missouri subsidiaries were all consolidated in the Missouri Bankruptcy Court. In March 2004, the Bankruptcy Court appointed David Sosne,

a bankruptcy examiner, to investigate the relationship between JECA and PBHLLC and the Broadwater Property deal, as it related to the consolidated bankruptcy proceedings. In his report, issued May 28, 2004, Sosne concluded that there was evidence to support claims that there was a breach of fiduciary duty in connection with the 1997 sale of the Broadwater Property and the creation of JECA's membership interest in PBHLLC. Sosne concluded that PCI equity constituents may have suffered economic harm as a result of improper activities related to the sale, including what may have been an inflated purchase price and a questionable high-interest loan used for the purchase.

B. The Mississippi Plan

The first bankruptcy plan to deal with the JECA distribution and the findings of the Sosne Report was the Mississippi Plan. In February 2005, PCI and the related Mississippi subsidiaries (PRC-Mississippi, BHI, and Vegas-Vegas) sold PCI's gambling operations in Mississippi, including the Broadwater Property owned by PBHLLC. The Mississippi subsidiaries filed a joint plan of liquidation (the Mississippi Plan) to allocate and then distribute the proceeds from the Mississippi sale. Based on its ownership in PBHLLC, JECA was entitled to the proceeds from the part of the sale of the Mississippi assets attributable to PBHLLC, including the sale of the Broadwater Property. As part of the proposed Mississippi Plan, JECA agreed to defer a portion of the proceeds that would derive

from its membership interest in PBHLLC, to be repaid at a later time in a later reorganization of another PCI entity. Thus, as a part of the proposed Mississippi Plan, JECA would acquire a claim against the remaining PCI entities in bankruptcy, a claim that was, in turn, based on JECA's membership interest in PBHLLC acquired in the 1997 sale of the Broadwater Property. The Sosne Report was critical of the Mississippi Plan because it included payment and deferred payment to JECA based on the Broadwater Property transaction, which, according to the Report, was questionable at best, and a serious breach of fiduciary duty by PCI insiders at worst. After considering the Sosne Report, however, the Bankruptcy Court confirmed the Mississippi Plan on May 27, 2005. This order of the Bankruptcy Court has become effective and distributions to creditors have been made under the plan.

C. The Missouri Plan

The JECA-PBHLLC relationship was considered again in 2006, when PCI sold its Missouri operations through a sale conducted under the guidance of the Bankruptcy Court. In connection with this sale, PRC-Missouri submitted a plan of reorganization (the Missouri Plan). Black Horse Capital Advisors, LLC (Black Horse), a PCI shareholder, objected to the confirmation of the Missouri Plan. The Black Horse objection was based, in part, on the information brought to light by the Sosne Report. The Missouri Plan incorporated JECA's deferred claim against

PRC-Missouri that was agreed to in the Mississippi Plan. In other words, JECA was entitled, under the proposed Missouri Plan, to receive a distribution based on the deferred portion of the proceeds of the Mississippi sale attributable to the Broadwater Property. Black Horse alleged, however, that the proceeds from the Mississippi sale had never been properly allocated, and that this allowed Connelly and other PCI insiders to allocate an excessive portion of the proceeds from the Mississippi sale to the Broadwater Property. Black Horse argued that JECA received too much money under the Mississippi Plan because the amount of money allocated to the Broadwater Property (and thus allocated to JECA through its ownership interest) was too high. Because JECA already received the full amount, if not more, it was due from PBHLLC in the Mississippi sale, any payment to JECA under the Missouri plan was an unacceptable windfall. On December 4, 2006, the Bankruptcy Court confirmed PRC-Missouri's plan of liquidation, including the JECA payment, after considering, and rejecting, the Black Horse objection.

D.  The PCI and PRC-Management Plan

The findings of the Sosne Report were considered a third time by the Bankruptcy Court in connection to the bankruptcy proceedings of PCI and PRC Management. PCI and PRC-Management submitted a plan for liquidation on August 27, 2008. The Bankruptcy Court approved the Disclosure Statement on

September 22, 2008, and PCI solicited votes on the Plan by providing ballots to those creditors and equity security holders in "impaired" classes. In late October, 2008, Zegeer received the Disclosure Statement, Plan of Liquidation, and Ballot to accept the plan. The letter received by Zegeer, as an equity security holder, instructed that a response would be due by November 7, 2008. As discussed above, Zegeer objected.

Zegeer's objection to the Plan was based on the findings in the Sosne Report. She cited the report extensively in her objection and brief on appeal. Zegeer claims that the Bankruptcy Court ignored the Sosne Report when it confirmed the Mississippi Plan. Because of this, she argies, the JECA distribution from the Mississippi Plan, and its later treatment in the Missouri Plan, was allowed to go forward without scrutiny. The findings of the Sosne Report, according to Zegeer, establish that the JECA-PBHLLC arrangement was improper. Zegeer argues that the Plan should not be confirmed because it incorporates the JECA distributions.

On November 17, 2008 the Bankruptcy Court held a hearing on the confirmation of the Plan. Zegeer was represented by counsel, who supplemented her written objection with an oral presentation at the hearing. The Bankruptcy Court orally overruled Zegeer's objections and motions. The court noted that the Mississippi and Missouri plans had already been confirmed, and that the "JECA

claim was dealt with in the Mississippi plan, and then it rolls over into the Missouri plan, and now here, again." Because the distribution had been dealt with twice before, the court could not "undo something that's already taken place." The court held that Zegeer had been given adequate notice of the bankruptcy proceedings, and that compensation had been adequately disclosed. In the amended order of confirmation, dated November 25, 2008, the court noted that it had considered Zegeer's objection. The order found that notice of the hearing was proper and sufficient, and in compliance with 11 U.S.C. § 1126(b), and that the Plan complied with the applicable provisions of 11 U.S.C. § 1129(a).

## II. Discussion

A district court reviews a Bankruptcy Court's legal conclusions *de novo* and its findings of fact for clear error. *In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). In reviewing the facts, the district court may not engage in its own fact-finding, even when the Bankruptcy Court's findings are "silent or ambiguous as to an outcome determinative factual question." *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987). Instead, the court must remand the issue to the Bankruptcy Court for the necessary factual determination. *Id.*

The "record on appeal from a bankruptcy court decision consists of designated materials that became part of the bankruptcy court's record in the first instance." *In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003); Fed. R. Bankr. P. 8006. Generally, parties are not permitted to supplement the record on appeal with materials that were not part of the record before the Bankruptcy Court. *In re CPDC*, 337 F.3d at 443 (citing *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 802 (E.D. Pa. 1986)). Both parties wish to supplement the record with materials that were not before the Bankruptcy Court at the time the Plan was confirmed. Zegeer would like to supplement the record with material from a proceeding pending before the Orphan's Court Division of the Court of Common Pleas of Allegheny County, Pennsylvania. It is undisputed that these materials were not before the Bankruptcy Court when it confirmed the Plan and ruled on Zegeer's objections. Because this court's review of the Bankruptcy Court's confirmation of the Plan is limited to the evidence before the Bankruptcy Court, I decline to take judicial notice of these pleadings, and I will strike them from the record.

While the general rule is that I cannot consider materials not presented to the Bankruptcy Court below, where mootness is raised by a party on appeal, I may take notice of facts that were not available to the Bankruptcy Court, if those facts go to the question of mootness. *See Manges v. Seattle-First Nat'l Bank (In re Manges)*, 29 F.3d 1034, 1041 (5th Cir. 1994). President Casinos has submitted an

affidavit from Ralph Vaclavik that addresses whether the Plan has been substantially consummated since its confirmation by the Bankruptcy Court. "[B]ecause mootness is a jurisdictional issue, [the reviewing court] may receive facts relevant to that issue; otherwise there would be no way to find out if an appeal has become moot." *Clark v. K-Mart Corp.*, 979 F.2d 965, 967 (3d Cir. 1992). Because it goes to the issue of mootness, I will deny Zegeer's motion to strike Vaclavik's affidavit from the record.

A. Zegeer's Appeal is Moot

The doctrine of equitable mootness, in the context of a bankruptcy appeal, allows an appellate court to dismiss a case as moot "in order to protect parties relying upon the successful confirmation of a bankruptcy plan from a drastic change after appeal." *In re United Producers, Inc.*, 526 F.3d 942, 947 (6th Cir. 2008). In the bankruptcy context, the inquiry is not whether there is a live controversy, as under Article III, but, rather, whether proceedings have reached "a point beyond which [the appellate court] cannot order fundamental changes in reorganization actions." *In re Manges*, 29 F.3d at 1039. Under this doctrine, an appellate court may dismiss an appeal of a confirmation order where "there has been substantial consummation of the plan such that effective judicial relief is no longer available" even where a controversy may still exist between the parties. *Id*.

In the Eighth Circuit, courts consider five factors when determining whether an appeal is equitably moot in the context of a bankruptcy reorganization plan: (1) whether the reorganization plan has been substantially consummated; (2) whether a stay has been obtained; (3) whether the relief requested would affect the rights of parties not before the court; (4) whether the relief requested would affect the success of the plan; and (5) the public policy of affording finality of bankruptcy judgments.  *In re Williams*, 256 B.R. 885, 896 n.11 (8th Cir. 2001).

### 1. Existence of a Stay

"When an appellant does not obtain a stay of the implementation of a confirmation plan, the debtor will normally implement the plan and reliance interests will be created."  *In re United Producers*, 526 F.3d at 948.  The failure to seek a stay will weigh against the appellant in the equitable mootness calculation.  *Id*.  Here, it is undisputed that Zegeer did not seek a stay of the reorganization plan.  This factor weighs in favor of mootness.

### 2. Substantial Consummation

"Substantial Consummation" is a term used to determine whether a Bankruptcy Court may amend or modify a reorganization plan.  11 U.S.C. § 1127.  It is defined by the bankruptcy code as follows:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;

>   (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
>   (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). As evidence of substantial consummation, President Casinos offers the affidavit of Ralph Vaclavik, Senior Vice President and Treasurer of PCI. Vaclavik's affidavit establishes that "the Debtors paid all non-disputed, allowed claims as provided for under the Plan, including the JECA claims" on December 8, 2008 or as soon thereafter as was reasonably practicable. Further, Vaclavik states that "the trust accounts for the Liquidating Trust have been created and substantially all remaining assets of the Debtors have been transferred thereto." Vaclavik also states that the professionals who participated in the bankruptcy cases have filed their final fee applications, which were approved by the Bankruptcy Court and entered as a final order on March 5, 2009. Zegeer did not rebut the facts presented in Vaclavik's affidavit. While Zegeer makes some argument that the Plan has not been substantially consummated, her arguments do not address the definition of substantial consummation under the Bankruptcy Code. Because the facts of Vaclavik's affidavit are undisputed, and because they establish that, under the definition provided by the Bankruptcy Code, PCI's Plan has been substantially consummated, this factor also weighs in favor of mootness.

### 3. Rights of Third Parties and the Success of the Plan

Even if a plan has been substantially consummated, a court may still be able to grant effective relief. *In re United Producers*, 526 F.3d at 949. A central inquiry in the equitable mootness calculation is "whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *Id*. (citing *In re Am. HomePatient*, 420 F.3d 559, 564 (6th Cir. 2005)). This analysis requires an examination of the nature of the relief requested. Here, Zegeer asks the Court to (1) direct the appointment of an independent Trustee to further investigate the omission or concealment of material facts; (2) permit Zegeer to conduct Rule 2004 Examinations; (3) appoint a committee of non-controlling equity security holders; (4) equitably subordinate the JECA claim, and (5) order JECA and other PCI insiders to return the funds received by JECA pending Zegeer's further investigation.

The JECA distribution was dealt with by the Bankruptcy Court in the confirmations of the Mississippi and Missouri plans. Since the Sosne Report was issued, the Bankruptcy Court has considered and confirmed three different plans of reorganization that have included a distribution to JECA based on the Broadwater Property deal. The Bankruptcy Court considered the Sosne Report in relation to the reorganization of PCI's Mississippi subsidiaries in 2005. On May 27, 2005, the Bankruptcy Court confirmed the Mississippi Plan, including a

distribution to JECA, after considering the findings of the Sosne Report. The Bankruptcy Court again considered the allegations of impropriety involving the Broadwater Property deal when it confirmed the plan of reorganization of PCI's Missouri subsidiary, including another distribution to JECA, in December 2006. Finally, the Bankruptcy Court overruled Zegeer's objections to the JECA distributions, based on the allegations of the Sosne Report, when it confirmed the plan for PCI and PRC Management in November 2008. In overruling Zegeer's objection, the bankruptcy judge stated that the JECA distribution was agreed to in the Mississippi Plan, which was not before her, and also in the Missouri Plan, which was not before her. In the words of the bankruptcy judge, she cannot "undo something that's already taken place." The JECA distribution, and objections to it, has been litigated and confirmed in front of multiple bankruptcy judges.

The PCI Plan represents the culmination of many years of litigation and negotiations involving multiple related entities. The assets in Mississippi and Missouri have been sold to purchasers that are not before this court. Claims have been paid under three separate plans. This court cannot grant the relief Zegeer requests without disrupting the PCI Plan, as well as the Mississippi and Missouri Plans.

    4. <u>Public Policy</u>

The bankruptcy proceedings of PCI and its affiliates have been litigated since 2002. The objections raised by Zegeer are the same objections raised by Black Horse in relation to the Missouri Plan. They are based on the Sosne report, rejected by the Bankruptcy Court in connection to the Mississippi Plan. These objections have been raised, heard, and considered. I find that public policy in the finality of bankruptcy judgments weighs in favor of mootness as well.

All five factors of the equitable mootness inquiry weigh in favor of dismissing Zegeer's appeal as moot: However, Zegeer's appeal is also meritless. This is an alternate reason to affirm the decision of the Bankruptcy Court.

B. Zegeer's Appeal Fails on the Merits

Zegeer's first argument is that she did not get proper notice of the bankruptcy proceedings and, as a consequence, is not bound by them. Whether Zegeer received proper notice is a question of fact. The Bankruptcy Court found that Zegeer received sufficient notice. Specifically, the court held that "Notice for the Confirmation Hearing was transmitted and served in compliance with the Bankruptcy Rules and the Disclosure Statement Order. The transmittal and service of notice of the Confirmation Hearing as described in the certificates of service filed with the Court were adequate, proper and sufficient under the circumstances." Nothing in Zegeer's objection, or any of her filings here, supports a finding that notice was not sufficient under the Bankruptcy Code. I find that this

- 17 -

factual finding by the Bankruptcy Court is not clearly erroneous, and therefore it must stand.

Zegeer's second argument is that the Bankruptcy Court simply ignored her evidence. This is plainly false. The transcript of oral argument shows that the court heard Zegeer's evidence, considered it, and then rejected it. Further, Zegeer's objections were almost identical to those set forth in the Black Horse objection, an objection that the court had already considered and rejected. The Black Horse objection was based on the Sosne Report, which had already been considered and rejected by the Bankruptcy Court in relation to the Mississippi Plan. In overruling Zegeer's objection, the bankruptcy judge noted that the JECA claim has been dealt with in both the Mississippi and Missouri plans, and that she had considered it as well. The record shows that the Bankruptcy Court fully considered, and then overruled, Zegeer's objection.

Zegeer further argues that the Bankruptcy Court failed to follow proper procedures in rejecting her appeal, but she does not provide legal support for this conclusion. In the written Order confirming the Plan, the Bankruptcy Court explicitly considered the § 1129 factors. Further, at oral argument and again in the Order, the court considered and rejected Zegeer's objection. There is no support for Zegeer's claim that the Bankruptcy Court failed to follow proper procedures.

For the reasons discussed above, the judgment of the Bankruptcy Court will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the Bankruptcy Court's judgment in favor of appellee President Casinos, Inc. is affirmed.

**IT IS FURTHER ORDERED** that Appellee President Casinos' Motion to Strike [#13] is granted.

**IT IS FURTHER ORDERED** that Appellant Mary Zegeer's Motion to Strike [#16] is denied.

A separate judgment is entered today.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of January, 2010.